```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                                              C/M
----------------------------------------------------------------X
                                                                :
JUNE ALICE FENNEL,                                              :
                                                                :
                              Plaintiff,                        :   **MEMORANDUM DECISION AND**
                                                                :   **ORDER**
              - against -                                       :
                                                                :   17-cv-3001 (BMC)
                                                                :
COMMISSIONER OF SOCIAL SECURITY,                                :
                                                                :
                              Defendant.                        :
                                                                :
----------------------------------------------------------------X
```

**COGAN**, District Judge.

1.        Plaintiff *pro se* seeks review of the determination of the Commissioner of Social Security, following a hearing before an Administrative Law Judge (at which she was represented by counsel), that she is not disabled for purposes of receiving supplemental security income. She has severe impairments of cervical disc disease and bipolar disorder. For purposes of this review proceeding, plaintiff has focused almost entirely on the latter as a disabling condition, as is appropriate considering that there is clearly substantial evidence to support the Commissioner's decision that her back problem is not disabling. Her bipolar disorder presents a somewhat closer question.

2.        The most compelling argument she advances is that there is no medical opinion or other assessment of her bipolar disease in the record that permits a finding as to her residual functional capacity sufficient to support the ALJ's conclusion that she can do light work if limited to simple and routine tasks.[1] The case is somewhat unusual (of those that reach federal

---

[1] The ALJ misphrased his conclusion as finding that her RFC is sufficient "to perform light work . . . except that the claimant can perform simple and routine tasks." He must have meant that her light work has to be limited to simple and routine tasks, as such tasks are obviously within the definition of "light work."

district court) in that the ALJ gave the opinion of the state psychological consultant, Dr. Fritz Galette, that plaintiff was unable to work, "little weight" because he "d[id] not specifically indicate the claimant's capacities for performing the requirements of full-time competitive work on a sustained basis." The ALJ also had to give "little weight" to plaintiff's social worker, Alicia Raniola, LCSW, who gave a detailed functional assessment that would have required a finding of disability, because her opinion was uncorroborated by any treatment records, and Ms. Raniola "did not appear" to have "a longitudinal understanding of the claimant's history and symptoms at the time she rendered [her] opinions." (Of course, a social worker is also not an acceptable medical source under the regulations, although that does not deprive one's opinion of all weight, but the ALJ did not comment on that.).

3. Once these two opinions in the record are effectively excluded by the finding that they warrant "little weight," what is there in the rather short record upon which the ALJ could find that plaintiff can do light, if limited, work? He focused mostly on her activities of daily living – raising her two children by herself in an apartment; doing household chores; taking care of personal hygiene; cleaning; laundry; cooking; shopping; good relationships with her children and boyfriend. Based on her ability to undertake these activities, he disagreed with both the social worker and the psychologist, holding that:

> The physical and mental capabilities requisite to performing many of the tasks described above, as well as the social interactions[,] replicate those necessary for obtaining and maintaining employment. Moreover, the level of medical treatment shows an ability to work. Despite carrying the diagnosis of bipolar disorder, the record is [de]void of medical evidence to indicate a disabling condition.

4. The ALJ's conclusions are not without some basis in the record. The most detailed evidence of the degree of impairment are the treatment notes from the Richmond University Medical Center, where she had medication management sessions with a psychiatrist,

and individual and group counseling with a social worker (principally Patricia Bond-McGlynn, not Ms. Raniola), from September 19, 2011 through December 19, 2012. In general, the notes show an improvement over time, putting aside a substantial number of missed appointments. She seemed to generally, although not always, do well at the group sessions. But the notes also show a highly agitated and fragile person, prone to anxiety attacks and periods of extreme agitation.

5. However, we have what appears to be a gap in the records. After plaintiff finished her treatment with RUMC, she apparently started with a new therapist, Ms. Raniola, in March of 2013, and continued through March 27, 2014. Ms. Raniola, in a mental impairment questionnaire apparently sent to her by plaintiff's attorneys (the one to which the ALJ gave "little weight"), described the frequency of her sessions with plaintiff as "on and off" during that period, noting that, as had been the case at RUMC, plaintiff had an "inability to maintain set appointment[s] or be consis[tently] on time for appointments." Although the form sent by plaintiff's attorneys emphasized the need to "*[a]ttach all relevant treatment notes"* (emphasis in original), none of Ms. Raniola's treatment notes were attached.

6. Plaintiff complains about this in the instant review proceeding, noting the ALJ's duty to develop the record and the lack of any further inquiry about the treatment notes from the ALJ. It may be, particularly because the questionnaire was lengthy, or perhaps because it noted that Ms. Raniola need not provide any notes that had already been produced to the Social Security Administration, that Ms. Raniola overlooked the request for her notes or decided they were not necessary.

7. I agree with the ALJ that if there are no or only limited treatment notes, then Ms. Raniola's very restrictive assessment of plaintiff's functional capacity will have no probative

3

value.  I also think that plaintiff's attorney, who requested and received leave to keep the record open to submit these notes, will not have done a very thorough job if these notes exist and he did nothing to follow up with Ms. Raniola.  But the duty to complete the record remains with the ALJ.  And such notes, if they exist, could be important, especially since they will provide the most recent evidence of the result of plaintiff's mental health treatment.

8.	Moreover, it would be unusual for a licensed social worker who fills out such a restrictive functional assessment form to never have retained any notes that would back it up.  Given their potential importance, I think it is worth more than the one effort by plaintiff's attorneys to determine if they exist.

9.	I also think that the ALJ's reliance on plaintiff's activities of daily living is not sufficient to assess her RFC because those activities are not a good, practical measure of plaintiff's impairment.  There are many indications in this record that plaintiff has wild mood swings that include disabling periods of high agitation.  The fact that she can cook a meal or shop really won't matter if those agitated episodes regularly shut her down.   Those outbursts, and her fragility in general, may not amount to episodes of decompensation in the clinical sense, but they may show moderate or marked deficiencies sufficient to conclude that she is disabled by reasons of her bipolar condition.

10.	That is what Dr. Galette was getting at when, after examining plaintiff, he concluded that "[c]laimant appears to be in a manic state. She would not be able to work in this condition."  In saying that, he was not intruding on the ALJ's province of determining disability.  He was saying, instead, that in the real world, showing up at work in the condition in which plaintiff showed up before him would lead the employer to show her the door or at least preclude her from doing anything productive.  That may well have an effect on the ALJ's determination of

4

whether she meets the statutory definition of disability, but hopefully there are many things in the record that would have such an effect and also do not usurp the ALJ's responsibility.

11. I do not accept the basis on which the ALJ so heavily discounted Dr. Galette's opinion. It is true that Dr. Galette did not go function-by-function in determining what plaintiff could and could not do. But that is obviously because he felt that the fact of her manic state, which he described, was a clear indicator that she simply could not work. He was being practical instead of following a checklist.

12. There are certainly indicators from Dr. Galette's notes of the examination sufficient to support his conclusion. The ALJ noted some of them – "variable" facial expression, eye contact, attention span and concentration; "grandiose" thought process and content; "elevated and hypomanic" mood; motor behavior that was "hyperactive and restless with leg tremors"; "pressured" speech; and "limited" insight and judgment. I do not see why Dr. Galette would have to proceed domain by domain in reaching his conclusion that plaintiff could not work in the state in which he saw her. It seems rather self-evident. And it is consistent with her displays of manic behavior in some of the treatment notes at RUMC.

13. Thus, it does not matter much if plaintiff undertakes activities of daily living on some days but sits on her couch for weeks after that (as she testified that she did, and as her inability to keep her therapy treatments supports). It also does not matter that she has low average intelligence, as intellectual level is not her problem. The issue is whether she can do light work for eight hours a day on a sustained basis. Her social worker thinks she cannot, but we lack the notes. The consultative psychologist thinks she cannot either, at least not in the state that he saw her. The only one that thinks she can is the ALJ.

14. There is not substantial evidence to support that conclusion. The case is remanded to the Commissioner for the following purposes: (1) to make a further attempt to obtain Ms. Raniola's treatment notes or establish that they do not exist; (2) to either request such additional opinions from Dr. Galette as the ALJ thinks necessary that would assist in determining plaintiff's RFC, or to obtain another consultative psychiatric opinion, without regard to IQ, that specifically focuses on the effect that plaintiff's manic episodes and limited attention span might have on her ability to perform light work; and (3) to reconsider the professional evaluations, including that of Ms. Raniola, in light of this decision.

15. The Commissioner's motion for judgment on the pleadings is denied. The Clerk is directed to enter judgment remanding this case accordingly.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      May 29, 2018